**ENVIRONMENTAL STUDY & PROTECTION**

v.

**PAC et al.**

**Civ. No. B–78–343.**

United States District Court, D. Connecticut.

Dec. 27, 1978.

Peter B. Cooper, Sosnoff, Cooper, Whitney & Cochran, New Haven, Conn., for plaintiffs.

Angelo J. Smeraldi, Asst. Atty. Gen., New London, Conn., Carl R. Ajello, Atty. Gen., Richard F. Webb, Alan M. Kosloff, Asst. Attys. Gen., Hartford, Conn., Richard Blumenthal, U. S. Atty., Diana Garfield, Asst. U. S. Atty., New Haven, Conn., William A. McQueeney, Asst. Atty. Gen., Wethersfield, Conn., for defendants.

## MEMORANDUM

ELLEN B. BURNS, District Judge.

The plaintiffs, certain nonprofit corporations and associations, have brought this action (1) to enjoin the construction by the Connecticut Department of Transportation (DOT) of certain segments of Route 25 in the town of Trumbull, Connecticut, unless and until they are redesigned to comply with applicable environmental standards, (2) to rescind the indirect source permit issued by defendant Pac, Commissioner of the Connecticut Department of Environmental Protection (DEP), for the construction of the highway projects and to direct DEP to rehear and review DOT's application, and (3) to mandate a review by the United States Environmental Protection Agency (EPA) of the plaintiffs' claims, proper investigation and findings and enforcement of the Clean Air Act against DEP and DOT.

This action is brought under the provisions of the federal Clean Air Act, 42 U.S.C. §§ 7401–7642, and jurisdiction is claimed as respects defendant Costle, as administrator of EPA under 28 U.S.C. §§ 1331 and 1361 and 42 U.S.C. § 7604(a)(2) and as to defendant Shugrue, as Commissioner of DOT, and defendant Pac, as Commissioner of DEP, under the provisions of 28 U.S.C. § 1331 and 42 U.S.C. § 7604(a)(1) and (a)(3).

DEP and DOT filed answers to the complaint and, as to those defendants, the hearing before the court was on the issuance of a permanent injunction, rescission of the permit and mandating a rehearing. EPA filed no answer, but, having agreed through counsel to advise the court of the feasibility of agency review of the plaintiffs' allegations, did so inform the court that the agency will endeavor to complete its investigation on or about January 23, 1979.

DEP and DOT have stipulated that the plaintiffs have standing to bring this action. However, they have filed several special defenses, including a contest of the jurisdiction of the court over the subject matter of the action. For reasons set forth below, the court finds that it has subject matter jurisdiction but that the plaintiffs have failed to sustain their burden of proof on the other issues requisite to their claim for relief.

## JURISDICTION

42 U.S.C. § 7604(a) provides in relevant part that " . . . any person may commence a civil action in his own behalf—(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to be in violation of (A) an emission standard or limitation under this chapter . . . " Subsection (f) of § 7604 defines "emission standard or limitation under this chapter" as, inter alia, "any condition or requirement under an applicable implementation plan relating to transportation control measures [or] air quality maintenance plans. . . ."

The defendants challenge jurisdiction claiming the indirect source review program under which the defendant Pac issued a permit for the construction of the project is not a transportation control measure and citing 42 U.S.C. § 7410(a)(5)(E) which reads as follows: "For purposes of this paragraph and paragraph (2)(B), the term 'transportation control measure' does not include any measure which is an 'indirect source review program.'" The thrust of the defendants' argument is that the exclusion of indirect source review programs from the definition of transportation control measures for the purposes of paragraph (5) and paragraph (2)(B) of § 7410 extends to similarly exclude such program from the concept of transportation control measures for the purposes of § 7604.

The definition by its terms relates solely to paragraphs (2)(B) and (5) of § 7410 and

was added to that section by P.L. 95–95, § 108(3) in 1977 to prohibit the EPA Administration from requiring state implementation plans to include indirect source review programs, the Congress leaving to the individual states the decision to adopt such a program. The effect of paragraph (5)(E) is to ensure that no such program may be mandated under the Administrator's authority to require transportation controls in state implementation plans under paragraph (2)(B).

It should also be noted that 42 U.S.C. § 7604 contains a definition subsection (f), subdivision (3) of which refers to transportation control measures and which was added to § 7604 by § 303(b) of the same P.L. 95–95. The principles of draftsmanship and logic mandate that were indirect source review program action intended to be excluded from § 7604, it would have been so stated in the same manner as in § 7410.

Even were this not so, the defendants have not addressed the plaintiffs' contention on the jurisdictional issue that the indirect source review program is an air quality maintenance plan and that the court has jurisdiction to enforce those parts of Connecticut's implementation plan related thereto. It is clear from the regulations of the defendant DEP that such is the case. Regs.Conn. State Agencies, § 19–508–100. This regulation was promulgated under the authority of C.G.S. § 19–508 which empowers the Commissioner of DEP to promulgate "regulations to control and prohibit air pollution throughout the state or in such areas of the state as are affected thereby, which regulations shall be consistent with the Federal Air Pollution Control Act and which qualify the state and its municipalities for available federal grants," and also authorizes the Commissioner, in accordance with the regulations, to require persons constructing or establishing new air contaminant sources, including indirect sources, to apply for a permit therefor.

On April 27, 1978, the plaintiffs gave notice to the defendants of their claims of violation of law, a condition precedent to the commencement of an action under 42 U.S.C. § 7604. This action was filed on September 8, 1978, more than sixty days subsequent to said notice, and the requirement of § 7604 that no action under subsection (a)(1) may be commenced prior to sixty days after a plaintiff gives notice of the violation has been met.

Accordingly, the court finds that it has subject matter jurisdiction of this action.

### STATEMENT OF FACTS

In accordance with 42 U.S.C. § 7410 the state of Connecticut has adopted a state implementation plan for National Ambient Air Quality Standards which has been approved by the Administrator of EPA. Although not required by § 7410 to do so, the state has elected, in furtherance of its plan, to authorize an indirect source review program, C.G.S. § 19–508, which the Commissioner of DEP has implemented in Regulation 19–508–100. That regulation defines an indirect source of air pollution, inter alia, as any highway with a design capacity of 1000 vehicles per hour in one direction and requires an indirect source permit to be obtained from the Commissioner of DEP before any such highway can be constructed. Accordingly, DOT applied to DEP for a permit for the construction of segments of Route 25 (Projects 144–108 and 144–110) in the Town of Trumbull, Conn. from a point in and around the Merritt Parkway, proceeding in a generally northwesterly direction to a point a short distance beyond Route 111 where it will connect with a previously constructed portion of Route 25.

Under guidelines established by DEP, DOT was required to determine where highway traffic would have an impact on air quality standards. As a result 21 intersections of the projects were identified and then evaluated over a period of time by DEP for the years 1980, 1990 and 2000 during which evaluation DEP required a number of redesigns of the highway. Ultimately DEP determined that, with respect to carbon monoxide, there would be no violations of the eight-hour National Ambient Air Quality Standard of nine parts per million (ppm) or of the one-hour standard of

thirty-five parts per million (ppm) but that, as to hydrocarbons, there would be emission violations in 1980, no violations in 1990 and violations in 2000 if the highway is built to Route 111 but no violation if the highway is completed to Route 84 (not presently planned). These findings were reached by the utilization of traffic data supplied by DOT in a computer model designed by DEP which forecast pollution emissions which would arise from the construction of Projects 144–108 and 144–110 from 1980 to 2000. The DOT data projected the worst traffic conditions at each of the twenty-one intersections, together with the worst atmospheric and wind conditions.

Based on the DEP findings, DEP Commissioner Pac issued an indirect source permit to DOT for the construction of the Route 25 projects with the following conditions: 1. All facilities described in the application are to be implemented before the highway begins operation; 2. Route 25 Projects 144–108 and 144–110 shall not operate until after February, 1983; 3. DOT may be required to provide future air quality monitoring and impact modeling along with an analysis comparing forecasted to actual monitored air pollution levels at any time prior to February, 1995 if the EPA approves a monitor for hydrocarbons and if the DEP determines that the impact modeling and the comparative analysis are warranted and feasible; and 4. a subsequent permit to operate Route 25 Projects 144–108 and 144–110 shall terminate in less than the expected life of the facility on February 1, 1991.

The plaintiffs claim that this permit is invalid because the decision to issue the permit violates Connecticut's air quality implementation plan in that it is in violation of federal clean air standards for allowable levels of carbon monoxide and interferes with the attainment and maintenance of the standard for photochemical oxidants because of excessive hydrocarbon emissions and in that the fourth condition to the permit that operation terminate on February 1, 1991, violates C.G.S. § 19–508(e).

DEP's analysis was arrived at by use of detailed data supplied by DOT and emission factors set forth in EPA publication AP–42, Supplement 5. This publication was the most recent at the time of DOT's application. A later publication, AP–42, Supplement 10, containing more stringent factors, which the plaintiffs claim should have been employed by DEP, was not used because some data was not then available and changes in the study would have had to be made. Department practice is not to change emission factors in the course of a study, there being a constant changing and refining of factors that are utilized in emission evaluation. DEP's carbon monoxide analysis did not factor in any background carbon monoxide or consider carbon monoxide emitted by automobiles at links of each intersection other than the one under study.

There is no federal or state statute or regulation requiring the use of a particular emissions factor publication or of any particular computer model. The computer model in use by DEP was designed by DEP and approved by its Commissioner and is, in the uncontradicted opinion of DEP's senior air pollution engineer who oversees the indirect source program, superior to those used by EPA and other states which employ models. EPA has recently issued new guidelines for indirect sources with models similar to that of Connecticut.

The DEP final analysis of carbon monoxide emissions showed that five intersections of the twenty-one studied would have carbon monoxide concentrations fractionally in excess of the eight-hour standard of nine ppm in nine instances as follows: Intersection 1.002, in 1980, 9.33 ppm; in 1990, 9.37 ppm; in 2000, 9.45 ppm; Intersection 3.002, in 1990, 9.12 ppm; in 2000, 9.13 ppm; Intersection 11.009, in 1990, 9.34 ppm; in 2000, 9.34 ppm; Intersection 18.002, in 2000, 9.35 ppm; and Intersection 82.081, in 1990, 9.27 ppm. In accordance with standard department practice, DEP rounded its predictions to the nearest whole number which resulted in a finding by DEP that none of these intersections will be in violation of the federal standards for carbon monoxide. The practice of rounding numbers is based on an

inherent error band to which the emission factors and computer model are susceptible and the use of "worst condition" data to produce conservative results. Additionally, redesigns required by DEP reduced to conforming levels carbon monoxide concentrations at about one-half of the intersections where, absent construction of the projects, there would be violations of the federal standards.

DEP also analyzed hydrocarbon emissions for the years 1980, 1990 and 2000, from build, no-build considerations, i. e., a consideration of the situation if the highway projects were built as opposed to the situation if they were not built. For 1980 and 1990, traffic data was supplied based on completion of Route 25 to Route 111. For the year 2000, data was supplied for completion of the project to Route I-84 as well as to Route 111. It was found that in 1980 the hydrocarbon emissions were higher in the build than in the no-build case. In 1990 the no-build situation resulted in higher emissions. In 2000 the build case provided higher emissions if the project were completed to Route 111 but lower emissions, if completed to Route I-84.

All analyses were based on the present state of the art with respect to motor vehicle pollution control with no consideration of future developments which might provide greater control.

The plaintiffs claim that DOT could avoid the necessity of ceasing operation of these segments of Route 25 in 1991 only by extending route 25 northerly to connect with Interstate 84 or by limiting access to Route 25 and that such a northerly extension would create significant water resource problems, also a statutory responsibility of DEP. Plaintiffs rely for this latter claim on claimed findings by DEP set forth in its proposed decision, Ex. B. These "findings" with respect to other environmental considerations were labeled "Dictum" and "outside the scope of permit issuance criteria" in the proposed finding and merely recounted that there had been testimony to that effect at the departmental hearing. This court had the benefit of no such testimony

but, even had it been offered, the matter before the court is whether the issuance of this indirect source permit was a violation of emission standards and limitations, including requirements of the state implementation plan, under the Federal Clean Air Act. Possible environmental problems in other areas which may arise should a presently unplanned highway extension be contemplated in the future are beyond the scope of this proceeding.

■ In a citizen's action under 42 U.S.C. § 7604, the plaintiff has the burden of showing that the state has violated its implementation plan. *Friends of the Earth v. Carey,* 535 F.2d 165, 173 (2d Cir. 1976). The court finds that in this case there has not been such a showing. Of the plaintiffs' two expert witnesses, Steven Thorick, DEP's senior air pollution engineer, having detailed how DEP's study was made, demonstrated the indirect source permit issuance does not violate the carbon monoxide emission standard. The other expert, Dr. Thomas Sharpless, testifying with respect to a state-wide problem with photochemical oxidants to which hydrocarbon emission contributes, agreed with Mr. Thorick that there would be a reduction in hydrocarbon emissions under the build situation of these projects between 1983 and 1995.

■ Plaintiffs claim that the carbon monoxide study failed to take into consideration background carbon monoxide and the contribution of carbon monoxide emissions at links of intersections other than the link under study and that this failure renders the study ineffective to determine conformance to standards. Carbon monoxide is a localized pollutant which is eaten up rapidly by the soil and disintegrates rapidly. Furthermore there is no federal or state statute or regulation requiring the consideration of specific emission factors or use of specific computer models, or, of any computer model, in the determination by a state whether a given project will violate the state implementation plan and national standards. Clearly discretion reposes in a state administrator to establish such fact-finding measures as he deems appropriate. In this case,

DEP utilized what was, at the time the study was initiated and for the greater period of the study, the most recent EPA publication suggesting emission factors to be considered for the projected periods involved, although there was no requirement for the use of that, or any other, publication. The computer model employed by DEP was more sophisticated than those of other states using a model and it was testified EPA has since adopted a similar model. There was no demonstrated abuse in the selection by the Commissioner of the process by which this study would be conducted. The DEP practice of rounding out results to the nearest whole number was justified on the basis of the inherent error band in the process and the use of worst condition data.

■ With respect to hydrocarbons, there was no showing of excessive levels during the operative period the permit allows. The plaintiffs, however, claim that Commissioner Pac is without authority to impose a condition limiting the operative period of the permit and that such a limitation is a violation of C.G.S. § 19–508(e) which provides that "[t]he commissioner shall not require the renewal of an indirect source operating permit issued in accordance with subsection (c) of this section unless such indirect source no longer conforms with plans, specifications or other information submitted to said commissioner in accordance with subsection (c)." Prior to the adoption of this sentence by the Connecticut General Assembly in 1977, DEP regulations required renewal of every indirect source permit every ten years, leaving the holder in doubt as to its life span. Subsection (e) now provides that such a permit will be in effect as long as the project continues to conform with information known to the Commissioner at the time of its issuance. In the instant case, information available to the Commissioner at the time of issuance of the permit, based on the current state of the art, already indicates that the Route 25 projects 144–108 and 144–110 will not conform to air quality requirements in 1991 and he may appropriately determine now, rather than in 1991, that the effective operating period of the permit will terminate then.

It is conceivable that presently unknown improvements in emission control or decision by DOT with respect to restrictions on the use of the highway or of intersections thereon will render the highway in conformity at that time. This is not, however, an issue or consideration before the court.

## CONCLUSIONS

This court has subject matter jurisdiction of this action under the provisions of 42 U.S.C. § 7604.

The segments of Route 25 to be constructed (Projects 144–108 and 144–110) will not violate any applicable emission standard or limitation during the operative life of the indirect source permit issued by defendant PAC as established by appropriate analyses by DEP.

The limitation on the operative life of the indirect source permit is not invalid under C.G.S. § 19–508.

Accordingly, judgment may enter for the defendants Pac, as Commissioner of DEP, and Shugrue, as Commissioner of DOT.